# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CYNTHIA A. HICKMAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 06-CV-582-SAJ ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration,[1] | ) ) ) ) |
| Defendant. | ) ) |

## OPINION AND ORDER[2]

Pursuant to 42 U.S.C. § 405(g), Plaintiff Cynthia A. Hickman (Plaintiff) appeals the decision of the Commissioner denying her Social Security disability benefits. Plaintiff asserts that the ALJ erred in failing to find that she suffered from a severe mental impairment at Step Two of the sequential evaluation process and that, in so doing, he failed to develop the record. For the reasons discussed below, the Court hereby affirms the decision of the Commissioner.

### 1. FACTUAL AND PROCEDURAL HISTORY

Plaintiff was born on July 2, 1954, and was 51 years old on the date of her administrative hearing. (R. 30, 72.) She has a high school education and past relevant work as an assembly line worker, nurse's aid, and a secretary/receptionist. (R. 30-31, 77-79, 89-90.) She alleges that she became disabled on September 29, 1997, by an anxiety

---

[1] Effective February 1, 2007, pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue, Acting Commissioner of Social Security, is substituted for Jo Anne B. Barnhart as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 42 U.S.C. § 405(g) of the Social Security Act.

[2] This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

disorder. (*See* R. 68, 72, 91-108.) Her medical records also show that she has hypothyroidism (*See, e.g.*, 115-22), but that impairment is not disabling or in dispute. Plaintiff last met the insured status requirements for disability insurance benefits on March 31, 1999. (R. 68, 75.)

Plaintiff filed her application for disability insurance benefits on June 4, 2004. (R. 72-74.)[3/] After she was denied benefits at the initial and reconsideration levels, she filed a timely Request for Hearing. Administrative Law Judge (ALJ) Richard J. Kallsnick held the hearing on October 5, 2005 (*see* R. 24-54), and issued an unfavorable decision on May 26, 2006. (R. 9-15.) Plaintiff filed a Request for Review with the Appeals Council, and the Appeals Council denied Plaintiff's request on August 25, 2006. (R. 5-7.) Plaintiff now seeks judicial review.

## 2. SOCIAL SECURITY LAW AND STANDARD OF REVIEW

The Commissioner has established a five-step process for the evaluation of social security claims. *See* 20 C.F.R. §§ 404.1520, 416.920. Disability under the Social Security Act is defined as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment
> . . . .

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only if his

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy. . . .

---

[3/] Plaintiff protectively filed on May 19, 2004. (*See* R. 68-71.)

42 U.S.C. § 423(d)(2)(A).[4]

The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed, and (2) if the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The Court, in determining whether the decision of the Commissioner is supported by substantial evidence, does not examine the issues *de novo*. *Sisco v. United States Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993). The Court will "neither reweigh the evidence nor substitute its judgment for that of the Commissioner." *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000); *see Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational. *Williams*, 844 F.2d at 750.

---

[4] Step One requires the claimant to establish that he is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 404.1510, 416.910 and 404.1572, 416.972). Step Two requires that the claimant demonstrate that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521, 416.972. If claimant is engaged in substantial gainful activity (Step One) or if claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). If a claimant's impairment is equal or medically equivalent to an impairment in the Listings, claimant is presumed disabled. If a Listing is not met, the evaluation proceeds to Step Four, where the claimant must establish that his impairment or the combination of impairments prevents him from performing his past relevant work. A claimant is not disabled if the claimant can perform his past work. If a claimant is unable to perform his previous work, the Commissioner has the burden of proof (Step Five) to establish that the claimant, in light of his age, education, and work history, has the residual functional capacity ("RFC") to perform an alternative work activity in the national economy. If a claimant has the RFC to perform an alternate work activity, disability benefits are denied. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

"The finding of the Secretary[5] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Williams*, 844 F.2d at 750. In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance. *Perales*, 402 U.S. at 401. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Williams*, 844 F.2d at 750. This Court must also determine whether the Commissioner applied the correct legal standards. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The Commissioner's decision will be reversed when he uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards. *Glass*, 43 F.3d at 1395.

### 3. ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ found that, through the date last insured, Plaintiff had the following medically determinable impairments: anxiety with agoraphobia, controlled with medication, and hypothyroidism. (R. 13.) However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for 12 consecutive months; therefore, she did not have a severe impairment or combination of impairments. (*Id.*) The ALJ explained that Plaintiff's statements concerning her symptoms were not entirely credible, that the objective medical evidence did not support her allegations, and that impairments which did not progress to

---

[5] Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103-296. For the purpose of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner."

a disability level of severity until after her date last insured could not form the basis for a finding of disability during the required period. (R. 14-15.) Accordingly, he concluded that Plaintiff was not under a "disability" as defined in the Social Security Act, at any time through March 31, 1999, the date last insured. (R. 15.)

## 4. REVIEW

### A. Step Two

At Step Two, the claimant must establish that a medically severe impairment or combination of impairments significantly limit his or her ability to do basic work activities. 20 C.F.R. §§ 404.1520, 416.920. "Basic work activities are 'abilities and aptitudes necessary to do most jobs.'" *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (quoting 20 C.F.R. § 404.1521(b)). Although the claimant need only a *de minimus* showing of an impairment at Step Two, he or she must show "more than the mere presence of a condition or ailment." *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997). An impairment giving rise to disability benefits is one which "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Therefore, "[t]he Step Two severity determination is based on medical factors alone, . . ." *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003).

Social Security Ruling ("SSR") 96-3p sets forth the process for a Step Two determination: (1) the claimant must have a medically determinable impairment; (2) this impairment must reasonably be expected to produce the alleged symptoms and (3) once the claimant establishes the requisite connection between the medically determinable

impairments(s) and alleged symptoms(s), the Commissioner is to then consider the "intensity, persistence, or functionally limiting effects of the symptom(s)" to determine whether the limitation is severe; that is, whether it has more than a minimal effect on the claimant's ability to do basic work activities. *Policy Interpretation Ruling Titles II and XVI: Considering Allegations of Pain and Other Symptoms in Determining Whether a Medically Determinable Impairment is Severe*, SSR 96-3p, 1996 WL 374181 (S.S.A.) "Only those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits without undertaking the subsequent steps of the sequential evaluation process." *Langley*, 373 F.3d at 1123 (citation and internal quotations omitted).

The key to the ALJ's evaluation of Plaintiff's allegations in this case is the date Plaintiff was last insured: March 31, 1999. The Social Security Act provides a system of limited benefits to individuals who meet certain requirements. Generally, an individual must establish that he or she was disabled prior to the expiration of his or her insured status. *Potter v. Secretary of Health and Human Services*, 905 F.2d 1346, 1348-49 (10th Cir. 1990); *see Miller v. Chater*, 99 F.3d 972, 975 (10th Cir. 1996).

None of the medical reports in the record show that Plaintiff was actually disabled prior to the expiration of her insured status. The ALJ observed:

> The objective medical evidence shows the claimant was being treated for anxiety with agoraphobi[a] and hypothyroidism as early as December 2, 1997. The claimant reported symptoms including spells of sweating, dizziness, pre-syncopal type symptoms, and getting agoraphobic if she is not treated for anxiety. The claimant was prescribed Xanax, Paxil, and Synthroid. On January 30, 1998, the doctor noted the claimant had done fairly well on her anxiety. The Paxil ma[d]e her very hungry, and she did not want to continue it. The doctor noted the claimant had a poor body image with an obsession with weight.

(R. 14; *see* R. 121-22.)  The ALJ also noted that, six months after the date Plaintiff was last insured, her doctor reported that she "was doing well on her current regiment with the Xanax, and added that she still got a little agoraphobic, especially on bowling night."  (R. 14-15; *see* R. 118.)

Other records from David O. Ring, D.O., show that, throughout the first six to nine months of 1998, Plaintiff felt that Xanax helped with her anxiety problems.  (R. 121.)  In October of 1998, her doctor stated that sometimes her anxiety was controlled by Xanax, and sometimes it was not.  Despite severe trauma in her life, she dealt with her anxiety "fairly well" and was "doing fair in function, but sometimes gets almost agoraphobic."  (R. 120.)  In December of 1998, her anxiety was still "doing fair," despite exacerbations, and Xanax "controls her anxiety to some extent."  (*Id.*)  On March 4, 1999, she stated that she was "doing well" (*id.*), and on March 15, 1999, she stated that she was doing "fair with her anxiety."  (R. 118.)

Later records show that Plaintiff continued to do "fair," "better," or even "well" with her anxiety until the end of 2000, when she experienced some decompensation "mostly due to depression," a death in the family, and other situations involving family members.  (*See* R. 116-17.)  In early 2001, she was "doing better" and "having less anxiety." (R. 116.)  The last time Plaintiff visited Dr. Ring her reported that Plaintiff continued to suffer with anxiety, but she stated that her medications worked "very well to control her chronic anxiety and panic symptoms."  (R. 115.)  Dr. Ring stated, "Overall, she's doing well.  She's having some home stress, but is coping with it fair." (*Id.*)  Plaintiff's disagreement with the doctor's assessment does not establish that she was disabled prior to the expiration of her insured status.

**B.     Developing the Record**

Plaintiff argues that the ALJ should have asked for medical expert testing and testimony regarding the onset of any possible severe mental impairment. The seminal case in the Tenth Circuit on the ALJ's duty to develop the record is *Hawkins v. Chater*, 113 F.3d 1162 (10th Cir. 1997). There, the Tenth Circuit observed that, although a claimant has the general duty to prove disability, a social security disability hearing is a non-adversarial proceeding. Accordingly, the ALJ is responsible in every case "to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Id.* at 1164 (citations omitted.) The *Hawkins* court acknowledged that the Secretary has "broad latitude" in ordering consultative examinations, which are necessary where there is a direct conflict in the medical evidence requiring resolution, the medical evidence in the record is inconclusive, or additional tests are required to explain a diagnosis already contained in the record. *Id.* at 1166; *see* 20 C.F.R. §§ 404.1512(f); 404.1519a; 416.912(f); 416.919a.[6]

However, the *Hawkins* court emphasized that

> the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists. When the claimant has satisfied his or her burden in that regard, it then, and only then, becomes the responsibility of the ALJ to order a consultative

---

[6] These regulations explain situations in which the Commissioner deems a consultative examination necessary. Generally, the need for a consultative examination arises when information the Commissioner needs is not "readily available" from the records of a claimant's medical treatment source, or the Commissioner is "unable to seek clarification" from claimant's medical source." 20 C.F.R. §§ 404.1512(f); 416.912(f). The Commissioner will purchase a consultative examination "when the evidence as a whole, both medical and nonmedical is not sufficient to support a decision on [a] claim." 20 C.F.R. §§ 404.1519a(b); 416.919a(b). This includes, but is not limited to, situations where the additional evidence needed to decide the claim is not contained in the records of the claimant's medical sources; the evidence cannot be obtained for reasons beyond the claimant's control; highly technical or specialized medical evidence is needed; a conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved; or there is an indication of a change in the claimant's condition. *Id.*

> examination if such an examination is necessary or helpful to resolve the issue of impairment.

113 F.3d at 1166.  Plaintiff did not satisfy her burden.  There is no direct conflict in the medical evidence requiring resolution, no medical evidence in the record that is inconclusive, and no additional tests are required to explain a diagnosis already contained in the record.  As the Tenth Circuit stated, "A retrospective diagnosis without evidence of actual disability is insufficient." *Potter*, 905 F.2d 1346 at 1348. The ALJ did not fail in his duty to adequately develop the record.

### 5.  CONCLUSION

The Commissioner's decision denying Plaintiff's application for Social Security benefits follows correct legal principles and is supported by substantial evidence. Accordingly, the Court **affirms** the decision of the Commissioner.

It is so ordered this 7th day of January, 2008.

Sam A. Joyner
United States Magistrate Judge